Good morning. I'm pleased to court. I'm Gary L. Thomas for the appellant. Would you be sure and speak right into the microphone? I'd like to reserve three minutes of my time allotted. The court, in requesting supplemental briefs on when the appellee became a trustee and whether it was related to any wrongdoing, emphasizes what our appeal was all about. One, there was never a time when she was named as a trustee in this matter. Why doesn't that just happen by operation of law under the state statute? It appears that when a person becomes vulnerable, as defined in the statute, and that status is combined with power over certain financial affairs, doesn't the law at that very moment create a trust relationship? When that happens three years later, yes. But what happens, that's merely a procedure to decide whether that trust relationship has been breached. But it isn't what creates the relationship, is it? Well, but at the time that vulnerability is determined, the person, in this case, Mr. Ferrara, didn't know that that was the case, that he was vulnerable. Well, why doesn't she have an obligation to know? Why does she not have an obligation to know? Because she received doctor's advice that her husband was, in fact, competent in December of 2004. But that could have been mistaken. I'm sorry? That may have been mistaken advice. Well, later on and three years later, a psychologist disagreed with that in the state court probate proceedings and said, well, no, we determined he was vulnerable back then, despite what the psychologist was telling her at that time and the other parties that were involved at that time. He was competent to manage his own medical decisions. Why would he be vulnerable then? Why would she be put on notice? Why would then she be told to be careful, as the district, the bankruptcy judge says? Well, she should have been, she should have known. Well, why would she have known? The doctors were telling her her husband was competent. So when you talk about vulnerability. Because it was one doctor, wasn't it? It was one psychiatrist. Yes. Not a psychologist, a psychiatrist that had been called in by the other siblings from a prior marriage for that specific issue. So the sibling, his adult children from the prior marriage are the one that triggered the initial opinion that he was competent to make his medical decisions? It arose during the time after his hospitalization. There was a dispute over who should manage his care at that point. And so that was the focus on managing care? And that was one of the issues that arose. Was there any issue at that time about whether she was managing the marital properties in an appropriate fashion? No, it was not a financial issue at that point. It was more the medical treatment, and she didn't have any dispute with that. Well, I guess I have difficulty understanding why a doctor's opinion that someone could make medical decisions for himself is inconsistent with a finding under the state law that the person is vulnerable to exploitation on financial matters. It seems to me there's a disconnect there, and I don't know why one would even inform the other. I think the problem with the disconnect is when it occurs, when that determination is made. It doesn't tell you at that point, all right, now you have created a trust res. Now there's an identifiable trust res. Now you have identifiable trustee duties. When people get married in Arizona during the wedding ceremonies, are they told that when they say they'll be married in sickness and in health, are they also advised that as part of their marital relationship, that if one of the spouses becomes ill and hospitalized, that at that point the spouse's obligation will be that of a fiduciary trustee? No, they don't have that admonition as part of the vows, and there are no standard vows as far as I know that would include that. But in this particular instance, they had a prenuptial agreement that says this is how we are going to manage our money together, and they were acting according to that prenuptial agreement. That the state judge did recognize, as I cited in my supplemental brief. I want to ask another question. I want you to assume for the purpose of this question that there was a trust relationship that began in 2004, and I know you do not concede that, but I want you to assume it for the purpose of this question. Is that the kind of trust relationship that Arizona law imposes that would be eligible under federal law for non-dischargeability of the debt? No. And I think because the Hunan case indicated that you do not use the broad definition of the fiduciary obligations that arise out of good faith, trust, and confidence. You don't avoid those, and you don't apply those to bankruptcy law. But the Arizona statute seems to impose a very strict trust definition, and I wonder why this isn't equivalent to a conservatorship, which is recognized under the bankruptcy code, at least by some courts, as falling within the non-dischargeability. Well, if you have a conservatorship or a guardianship of the person or a declaration that this person is in fact incompetent or is comatose, let's assume he's comatose, then I think you may have a problem with saying, okay, I can't make decisions for this person because he's in comatose, but we can act on our prenuptial agreement that says this is how we agree to carry on with our marital duties even though one of us is incapacitated. Well, so in your view, the outcome here is determined by whether Mr. Ferrara is comatose or is awake? How is that relevant under the Federal definition? Well, the Federal statutory fiduciary standards require a trust, a trustee's duties that are spelled out. Right, but the Arizona law doesn't seem to differentiate between the awake and the comatose when it imposes these duties. Well, that's true because they declare that at some point that they're saying he's vulnerable, but I use that as an example because then vulnerability would be notable or at least noticed by the wife that this person is incompetent. Here you have the exact opposite, where the doctor is telling her, your husband is competent to make medical, serious medical decisions for himself. So, you know, obviously he's not comatose when he's able to do that, and they're acting according to their prenuptial agreement, which Arizona law recognizes and encourages. I take it if there's a conservatorship or a guardianship, there is some formal proceeding that takes place to establish that status? Yes, you apply for conservatorship or you apply for establishment of guardianship. And you have to establish the basis for that, correct? You use the medical advice that you have to establish the guardianship that this person is incapable of doing these things. You declare that status, and you identify the property that's going to be involved in that. That does not occur. And that's what the Hononkin decision reminds us, that Hameter and Inouye Teichman and all say, Inouye Pedraza all say you have to have the elements of an express trust, a trust identified, trustee duties noted. The trustee accepts these duties. It's not imposed on her, the trustee accepts these duties, acknowledges the duties, property is conveyed. It's not determined by some ambiguous vulnerability status that is determined sometime in a dispute between medical practitioners, something that's a non-legal aspect to it. Here the law defines for bankruptcy purposes what a statutory fiduciary should look like, and it should look like an express or technical trust. This is nothing like that at all. Thank you, Counsel. You have about half a minute for rebuttal. Thank you. Good morning, Your Honors. May it please the Court. My name is Craig Collins. I represent the appellee, Mary Jane Condit, in her capacity as a trustee or as a conservator, rather, of the estate of John Czaraczak. Title IV. Arizona law, those are probably the same thing, aren't they, trustee and conservator? Yes, sir. Okay. There is a distinction between incapacity and a vulnerable adult, and Title XLVI defines incapacity. It also defines what a vulnerable adult is. For years we did not have a definition of vulnerability, and cases were going through the trial courts where the issue was always based upon whether the person was competent or not competent with respect to certain kinds of wrongdoing. That's no longer the test in Arizona. It's one of the tests, but it's not the exclusive test. And an alternative test came about as a result of Arizona's passage of the Adult Protective Services Act, which created this definition of a vulnerable adult. A person can be competent, but still can be unable to protect himself from abuse, neglect, or exploitation because of a physical or mental impairment. And, counsel, just let me cut to the chase as to what really bothers me about this case. In every marital relationship, there's the potential for one spouse to be disabled in some fashion, where the other spouse, who may not necessarily have been familiar with the financial aspects of management of the marital community, so the spouse that is, say, managing the financial affairs, gets sick. Would the other spouse know that at that point, that marital relationship has suddenly become a trust relationship? Does Arizona publicize, does the legislative history of the Act contemplate that in the normal marital balancing and shifting of kinds of arrangements in managing the marital community property and whatever separate properties may have come into the marriage at that time, do people know that their marriage may turn into a trust relationship if one of the spouses becomes what Arizona defines as vulnerable? I don't know of any statutory provisions that specifically address. How about cases? Are there Arizona cases that have made this clear in the family law area, that just because you're a spouse and your spouse gets ill and could be declared vulnerable, you're suddenly operating the household, monthly expenses, operation of the family car, whatever it may be, and you are suddenly in a trustee fiduciary position? I don't know of any family law cases that have addressed it. I don't know of any probate cases which we, that the court would end when we deal with matters of this type. Because my concern is, I mean, it just seems as a matter of Arizona law, which I understand that we have to, to some extent we're bound by it, but it just seems to me it's somewhat dubious to say that someone, two years or three years after these events start happening, some judge can come along afterward and say, oh, by the way, this person was vulnerable. And I appreciate the statute may have clarified it, but it's mind-boggling on the marital relationship. So that takes us to the next phase, a question that Judge Graber raised. Why and how should the federal bankruptcy law, which has its own federal policies underlying federal bankruptcy, why should federal bankruptcy law recognize this as a trust sufficient to avoid discharge in bankruptcy? How does it meet the standards? It's not even close to an express trust. Right. Well, may I first address the marital relationship matter? Sure. Thank you. Title 46 certainly does not accept from the applicability of the duty created a marital relationship. Second, this is not your typical long-term marriage. This is a marriage that started on December 31st of 2000. Mr. Cherichak became vulnerable in September of 2004. Before the marriage, there was a premarital agreement. Counsel, that doesn't help for what you're arguing that we're going to be accepting in this case. We're saying that if Arizona, even in a long-term marriage, without a prenuptial agreement, if we say that an Arizona-imposed vulnerability trust like that qualifies as a trust for purposes of federal bankruptcy law, which the BAP has so held, it doesn't turn on the facts of this case. Right? Because it's not defined in terms of how long the marriage lasted or anything. That's not what the probate court said. It just defines it on the status of the spouse. Well, I think the real point is it doesn't matter whether you're married or not. These statutes do not accept a spouse from being liable. You have Arizona Revised Statutes 46, 456, that creates the duty. Any person who is in a position of trust and confidence with a vulnerable adult must act for the benefit of that. So it could be a housekeeper or a child or an aunt or it could be anybody. But I'd appreciate your getting to Judge Fischer's second question, which is the federal question. Opposing counsel says that in the federal realm, a trust is a trust only if the trustee has knowingly accepted or acknowledged the trust duties or relationship, and that if it's just imposed as a matter of law, that doesn't count. What is your response to that? Well, it doesn't address all of the cases, particularly where that type of fiduciary capacity relationship is necessary, and the 523A4 has been found. For example, you have Emory-Lewis, which was the partnership case decided by this court, which imposed then a 523A4 relationship upon the partners. But in partner, how does a partnership get created? Well, there's no requirement that there be a written document in Arizona. So as long as somebody comes along and declares a joint venture that you've entered into, a partnership, then it qualifies as a trust? It certainly did in Emory-Lewis, yes, sir. And then in N. Ray Baird, you had the case under Title 33 of Arizona law where this court stated that where a property owner pays a general contractor money, the statute said that those monies would be held in trust to be paid for those persons that have provided labor material. And so you have Baird Construction not paying the subcontractor. This court found that that was a sufficient fiduciary relationship under 523A4. Those are what's troubling us, counsel. These are all commercial transactions where you have parties who are coming together in a commercial business kind of arrangement. You have real estate transactions. I know that's another one where there can be a trust. I just say for federal purposes, for the federal bankruptcy law to say that in a marital relationship, you have a non-dischargeable trustee obligation. And I just find that difficult. Well, you certainly can under Arizona law where there's been a wrongdoing. And when there's a wrongdoing done by the spouse who is in a position of a trustee, as defined by 46456, in a position of trust and confidence to a vulnerable adult, then that spouse has all the duties to express trust. But doesn't that run into the Davis case? You can't impose an obligation just that arises from the wrongdoing. If the only obligation is that created by wrongdoing, it's not the – it doesn't stand up. It's not created by the wrongdoing. What's that? It's not created by the wrongdoing. It's a status that's imposed before the wrongdoing. The status would exist in the – Well, you shifted your argument. That's what you were – Judge Fischer was questioning you on. And then you said, but if there's wrongdoing. There is wrongdoing. There's no wrongdoing. No, but the wrongdoing doesn't help you. If there's – if it's only by wrongdoing, you're going to lose. Right. I understand your point. And I agree that the trust status was independent of the wrongdoing in this case. Had there been no wrongdoing, Ms. Cherichak, Ferrara, would have been subjected to the same duties and responsibilities as a trustee of an express trust as a result of Title 46 and Title 14. I think my – Yes. Your time has expired. Thank you. Thank you. You have a little bit of rebuttal time remaining. Thank you. The issue with respect to other cases where trustee status has been conferred were those involving the contractor case where the Arizona statute says in the statute funds held by the contractor are held in trust for the homeowner. It expressly states that. The law of partnership makes you a partner or makes you a trustee with your partner's funds. That's part of the business of being a partner. The other case was where the – I believe it was a conservator was undertook to conserve the funds of a minor. And that duty says, yes, I will take care of these funds. And they declared basically that that trust exists, that the trust res exists, that your trustee undertakes those responsibilities and will do that. In this case, all the Arizona statute did was create a cause of action. Thank you, counsel. That's what the cases say. Thank you. We appreciate the arguments of both counsel. The case is submitted. And we will hear one more case before taking a break, just so for purposes of managing your time.
judges: Noonan, Graber, Fisher